We'll call the next case. Charles Gray Bruce, Appellant v. Warden of Williamsburg. And Mr. Matreja? Matreja, yes, Your Honor. Matreja? Yeah, pretty close. Yes, he did. Good morning, Your Honors, and may it please the Court, Reggie Matreja representing the Appellant, Charles Bruce. I'd like to reserve three minutes of my time for rebuttal, please. Mr. Matreja, that request will be granted. And before I forget, we thank you for your commitment to this case, for taking the case as you did. Thank you, Your Honor. It's been my privilege. Your Honors, after the Supreme Court's decision in Fowler, no reasonable juror could have found that Mr. Bruce committed... Jurisdiction still in issue. I know both you and the respondent say that this falls within the Dorsonville exception, but is it clear that you couldn't pursue a 2255 in Tennessee? And is that the question? In other words, we need to look to the jurisprudence of the Sixth Circuit for purposes of determining whether this case is properly brought as a 2241 petition. Your Honor, absolutely whether this case could have been brought under Section 2255 is essential to whether this court has jurisdiction under Section 2241. But Mr. Bruce had previously filed an initial Section 2255 petition in Tennessee challenging his conviction. And so under the plain language of the statute, he's permitted to file an additional such petition under 2255 that raises a new rule of substantive law, only if that rule is... When was his 2255 filed? His first 2255, I believe, was filed in 2008, before Fowler had come down. Was there a decision out of the Sixth Circuit dealing with this murder of a witness to prevent information being given to a federal law enforcement officer before Fowler? In other words, wasn't there case law in the Sixth Circuit that is consistent with Fowler, that would have enabled him to bring this matter there? I suppose he could have raised the argument that was accepted in Fowler if that is what... Wasn't that the United States v. Carson? I think, Your Honors, that the question here that this court has said is salient under its Tyler case, and Dorsey and Bill as well as a holding court of this court that says this, is that if there is a new rule from the Supreme Court of statutory substantive law that could not be raised through 2255, and that under that rule the prisoner is actually innocent of violating the statute for which he was convicted, then 2241 is the proper way to proceed. Is our rule correct in that regard? Why should there be one rule for statutory rules and another rule for constitutional rules? Because constitutional rules under 2255 had to be specifically made retroactive by the U.S. Supreme Court. That's correct, Your Honor, but I think constitutional rules that are matters of substantive law as opposed to procedural law are generally retroactive, and in terms of the differential treatment between 2255 and 2241, I think that's a product just of the language of the statute. Where 2255 specifically talks about new rules of constitutional law leaves unaddressed new rules of statutory law. But as this court said in Dorsey and Bill, and I think as animates the Tyler decision, which of course is binding, if you were to hold a prisoner in custody despite that prisoner no longer violating the substantive law as held by the Supreme Court subsequent to conviction, that would raise thorny constitutional issues under the due process clause among other provisions. But Tyler was different in this respect. Tyler was a prosecution in the Middle District of Pennsylvania. It always dealt with Third Circuit jurisprudence, but Bruce is a conviction in the Sixth Circuit, and if Sixth Circuit law predating Fowler said that you had to show a reasonable likelihood of an investigating agent, that information would be given to a federal law enforcement officer, why wouldn't he then be precluded from using 2241 because he could have used 2255? Well, Your Honor, I'm not sure if, and I apologize for not knowing this, but I'm not sure if the Sixth Circuit had held that when Mr. Bruce has tried. And so when he was trying, the governing law that was applied imposed it much lighter. But what if the law in the Sixth Circuit changed between when he was tried and Fowler, in other words, predated Fowler? Right, and I'm not sure if at that point he had another 2255 available to him, and I would be happy to supply something to the court on that. But this court has made clear that if 2255 is no longer an option to a prisoner, then 2241 is appropriate if what you're dealing with is a new rule of statutory law that narrows the substantive statute that a prisoner was held to have violated. You're saying that you don't need to be concerned about the savings clause trigger that talks about retroactivity in 2255. I don't think this court needs to be concerned about that, precisely because we are dealing with a substantive criminal statute that has been narrowed. I think some of the difficult questions that can arise with retroactivity concern procedural rules that change. But when dealing with the narrowing of a substantive statute, I think those difficulties are not there. And again, Tyler was dealing with Fowler itself, Section 1512 itself, essentially the very facts that we have here. And the court in Tyler held that a Section 2241 petition was proper. What's the significance of the fact that that's what we held and then the matter was remanded to the district court and the district court ultimately determined, based upon the record as it existed, that it was not more than outlandish or simply hypothetical that the victim in that case would have provided information to a federal law enforcement officer. So ultimately, I know that case is going to be retried, but ultimately it was determined that he was not factually innocent under Fowler. What's the significance of that to our case here? Well, the significance as a general matter is that, of course, whatever this court holds with respect to Mr. Bruce on this current record does not necessarily bind the result that may happen on remand if this court chooses to remand because the government could perhaps introduce additional evidence. But in terms of what actually happened in Tyler on those facts, those facts are very different from the record in this case. The district court in Tyler on remand upheld the conviction under Fowler because the victim of the tampering in that case was actively working with a state official who in turn was actively working with federal officials. And due to that active cooperative relationship under the terms of the statute itself, Section 1512 itself, the state officer was effectively a federal officer. And so you had tampering with a witness who was speaking with a federal officer in effect. You don't have that here. When the alleged tampering occurred in January 1991, there was no pending federal investigation. The victims were not talking to anyone at all, not state officers who were working with federal officials as in Tyler. And the crimes that these victims reportedly witnessed were quintessential state law offenses, basically a robbery involving a few thousand dollars of property and some related arson. You're asking us to focus in terms of freeze the point in time at the moment of the offense itself. Why should we do that if what we're looking at is reasonable likelihood and there are things that happen after the offense that make it appear that resort to federal authorities would be inevitable? Why isn't that relevant? Why should we freeze it at the moment of the offense and consider what's in the record at that point? Well, I think, Your Honor, the reason is because when the offense occurs and the crime occurs, when the tampering occurs, it either is federal or isn't. And the Supreme Court in Fowler, I think, makes that clear by saying that at the time of the tampering, you need a reasonable likelihood that federal officials would become involved. Now, I think I agree with Your Honor that what ultimately in practice happens afterwards could inform the court's understanding of whether federal involvement was indeed likely. But I think it can only supplement whatever was evident at the time of the actual tampering. So if there is evidence suggesting that when the tampering occurred, there is a possibility of federal involvement, that evidence could perhaps be enhanced by seeing that federal involvement actually happened. Well, our scene of a commercial establishment certainly has the possibility of ATF involvement, right? It certainly has the possibility of federal involvement, but any federal crime has the possibility of federal involvement. And the Supreme Court made clear again in Fowler that essentially all state law crimes or close to all state law crimes could be squeezed into federal law as well. So if we have what could be charged as a federal offense, just as an anchor, and if you were conceiving, as I thought in your brief you were not, that the subsequent events are relevant and can inform whether or not there's a reasonable likelihood, why on this record, given the pattern of witness intimidation that precluded the state authorities from being able to move forward without the resources of federal interstate assistance and witness protection, why wasn't it basically inevitable when we look at that full picture, including the aftermath of the offenses? I certainly don't concede that, Your Honor. I think that the evidence of what actually happened is only relevant to the extent that it relates to what would have been reasonably likely at the time of the offense. And so just to focus on the facts of this case and the theory of witness intimidation that the government has advanced to satisfy Fowler, that can ultimately support Mr. Bruce's conviction only if that witness intimidation and crucially the federal involvement to deal with whatever witness intimidation supposedly occurred all was reasonably likely at the time of the alleged tampering in January 1991, and further that there is sufficient evidence of all of that in the record such that a jury could connect those dots. And does the gravity of the crimes committed come into play here in terms of making a determination whether the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical? On this record, Your Honor, I don't think it does because there's no suggestion in the record that when crimes were particularly serious or have sufficient gravity, federal officials take notice. And on that regard, I think it's telling that for two years this was not a federal investigation. This was solely a state and local matter for two years. And the federal officials that ultimately got involved here only did so in January 1993 at the state officials' behest. Why does the time involved matter? If looking at the record, I mean, our concern isn't the point in time that state authorities turn this over to federal authorities. It isn't our question the reasonable likelihood that the victims would at some point have communicated with law enforcement. If it takes state law enforcement four years to figure out that they're not going to get anywhere and to turn it over to federal authorities, but because of either the reputation that preceded the offense of the perpetrators or subsequent acts, the state authorities simply aren't able to do that and ultimately do turn it over. If it's inevitable, why does it matter if it's two months or two years or longer? It needs to have been inevitable, Your Honor, as Your Honor's question put it. And so I think the timing here is useful only in the sense that it shows that it was not inevitable when looking at what happened in January 1991. At that time, it needs to have been reasonably likely that federal officials would have taken notice and would have gotten involved. And there's no suggestion in the record that that was the case, that crimes like these, be it arson and robbery of a few thousand dollars like what occurred, be it the Bruce family or anything else about this crime, was something that federal officials were actively investigating or considering to investigate or otherwise taking any interest in. At that time, it was purely a state and local matter and remained such. And as a result, the reasonable likelihood standard set forth in Fowler is not satisfactory. I mean, you know, I think in some cases you could make that argument. I'm not so sure that even looking at the time of the crime, that's a good argument here. What precipitated this whole series of events was the theft and the robbery of the mussel shells, which they attempted to, that they went on the property to get and predetermined if anybody was in their way, they'd get killed. And they did this not to have a collection of mussel shells, but to sell them to other buyers who were going to sell them in interstate commerce. Why isn't that federal nexus established right at the time of the commission of defense? Because of the interstate commerce connection. Your Honor, the question is not whether there is a federal nexus. I agree that there would be a federal nexus there. If there's a federal nexus, isn't there a reasonable likelihood, the next question, is there a reasonable likelihood if there's a federal nexus or a federal official? I don't think so, Your Honor, because if that were the case, that would essentially then be a rule that whenever federal prosecution is possible, it's then reasonably likely. I think the question is whether even when you have federal nexus, even when you have conduct that could be charged as a federal crime, isn't additionally reasonably likely that federal officials will actually investigate and prosecute that crime. And there's no suggestion on this record that that was the case with this crime. Well, following on Judge Fischer's question, if we look at the time of the offense, don't we also have in the statements of numerous witnesses and also taking account of some of the statements that are relayed in the Eleventh Circuit's opinion, the subject of your 28-J letters, enough for a reasonable jury to conclude because of the reputation and history and types of threats and intimidation that even preceded the offense, that the victims here, had they survived, either would have opted to self-report to federal authorities or that the investigation would inevitably have gone to federal authorities? Why isn't there enough in the record, given testimony of Patricia Odom, Eric Travis, Santel, Mike Franklin, even the jailhouse informant who relayed what the brothers themselves talked about in terms of owning the town? Respectfully, Your Honor, I don't think it's enough. I think it would be speculative on this record for a jury to have concluded that federal involvement was inevitable or even reasonably likely here. Because there's nothing in the record suggesting that when faced with reluctant or intimidated witnesses, what the state officials typically do, what's in their playbook, is to go to the federal authorities for help. Nor is there anything suggesting that when witnesses feel intimidated, what they typically might do is go to federal officials. It's worth noting this is not an investigation that was purely local. Very quickly, local authorities elevated it to the state officials who then ran the investigation for a couple years, complete with a sophisticated forensic analysis. And through all that, there's no suggestion that the witnesses who were feeling purportedly intimidated were hesitant because they only wanted to speak to someone federal. The only suggestion that federal officials really made a difference in who cooperated is with just two of the 42 witnesses that were part of the government's case in chief. The jailhouse informant would have cooperated, I think, even if a state official had spoken to him instead of a federal official. He just spoke because he was in jail. The last witness who did testify at a federal grand jury, to the extent that the confidentiality of the grand jury is why he felt comfortable testifying, that's not anything that needed to happen under federal law. It could have happened under Tennessee state law. And so the upshot of all that is if the court accepts that witness intimidation was inevitable here, as I think it needs to for the government's theory under Fowler to work, that still doesn't show that federal involvement was reasonably likely in January 1991 because there's nothing in the record. Okay, Counselor, we'll have you back on rebuttal. Thank you, Your Honor. We understand your position. Before we call Ms. Ritz, Ms. Berge, would you close the door here? Thank you, Your Honor. We'll turn off the easiest to close the door and worry about technology later. Thank you. Okay, Mr. Ritz. May it please the Court, Kevin Ritz for the Warden. When Bruce and his brothers killed Danny Vine and Della Thornton more than 25 years ago, it was reasonably likely that Danny and Della, had they survived, would have had at least one communication with federal officers. Bruce cannot meet his burden of showing actual innocence on this record, and this Court should affirm. Is that based on the evidence that you have? Is that based on the state of the record at the time of the offenses? And what is the relevance of subsequent conduct that you spend much of your brief on? The relevance of the subsequent conduct is highly relevant, Your Honor. We don't just freeze and look at the time of the offenses. The question is whether it was reasonably likely at that time, but the evidence that informs that inquiry, how to answer that question, we can look at subsequent evidence, and that's what we did. This Court did in Tyler and these other circuits that have considered this type of foul or inquiry. At the time, as Your Honor pointed out, there was this pattern. That was established. This pattern of intimidation by this family, local law enforcement was scared of them. That was before these crimes occurred. This was a reference in the record to a, this is obviously a very rural area, small sheriff's department. The sheriff had been on duty for four months, was previously an insurance salesman. After these crimes occurred, the Bruce's acted in accordance with that long-held reputation for violence. They intimidated these witnesses. We know this because, and the jury knew this, because there was testimony that Bruce said this. Let's go back a step, Your Honor, where Judge Van Aske started with counsel. When the initial 2255 was filed by Bruce in 2008, did he have an unobstructed procedural shot at presenting this claim in the Sixth Circuit? Your Honor, we, I don't necessarily think he did. Well, he had the opportunity to raise a claim, much like the Fowler defendant did in Fowler. Was it obstructed by any prior case law? There is a 1984 case, Schiappe, S-C-I-A-F-E, in the Sixth Circuit, which deals with this statute. That was obviously before this prosecution. Doesn't clearly, I would say, delineate what the test should be on this intent element of 1512A1C. By the intent element. That's a different question. Well, we submit that Fowler, and Justice Breyer's opinion in Fowler, is interpreting this intent element and what the intent is, the reasonable likelihood, at the time of the offense. I should say the state of mind question is a different question. State of mind question. Fair enough. Thank you, Your Honor. I will say we considered this jurisdiction issue pretty carefully. We engaged in, I would say, a good faith effort to interpret this court's decision entirely. You didn't want to tell us our position was wrong. We understand that. I'm giving you the opportunity now to maybe say whether or not, by the unobstructed procedural shot argument, whether or not the question could have been raised in the Sixth Circuit. I think, Your Honor, the Sixth Circuit obviously denied his attempts to seek successive 2255 relief. And the Eleventh Circuit recently has denied, on jurisdictional grounds, the co-defendant and Brother Robert Bruce's petition. It is our best reading of this court's precedent on the savings clause, Dorsainville. And under our current law, we wouldn't deny it. And under the current law, here, right, Your Honor, the claim could move forward through the savings clause. But that's not my question. My question was, did he have an unobstructed procedural shot in 2008 in the Sixth Circuit? Yes, Your Honor. Carson came out in 2009. Right. And Carson adopted the standard, as far as we could tell, the Eleventh Circuit standard that was then rejected in Fallon. It just seems to me that there's something wrong here with the test. You can't make your claim in the Sixth Circuit. You can't make your claim in the Eleventh Circuit. And it makes me wonder whether or not we may be, perhaps, out of step. Or the other two circuits may be out of step, too. I mean, that's the other side of this. I don't know. It could be, Your Honor. And I do think that there is some daylight between this court's approach to the savings clause, as shown in Tyler and Dorsainville, and certainly the Eleventh Circuit's, which kind of steps this very strict test about a circuit-busting Supreme Court decision, and that was the basis of it. Are these in bank cases in the other circuits? Are you familiar with them? I believe there's two circuits where they're pending in banks on one of these questions, the Fourth and Eleventh Circuits. On the Fowler questions? On the Savings Clause question. I am somewhat familiar, I'll tell you, if it has to relate to the kind of Johnson and Post-Johnson and Mathis type of claims. I'm unfortunately quite familiar with some of those, certainly in the Sixth Circuit, and I may have some knowledge of the online proceedings in those courts, if that's what the subject matter is. But bottom line on jurisdiction is we are best treating the Fowler, and of course the district court here, initially the magistrate recommended you should dismiss on jurisdiction the next day. This court comes out with Tyler and sends it back, and so the district court sent it back. And, you know, our view is on the merits, this is an easy case. And this is an easy case on the merits, partly because of Tyler. And I do think it's helpful to point out that the only court that has rendered a decision in Tyler on the merits was the district court on remand. To date, as Judge Van Aske mentioned, there will be another trial apparently. But to date, the only court was the district court on remand, which found that the evidence there was not enough to establish, or I'm sorry, that Tyler could not establish actual innocence in the face of that evidence. And that evidence, I imagine, might come out even more strongly in the retrial situation, but that evidence compared to what we have here is fairly generalized and nonspecific. We have this specific evidence, not the first, the pattern before these crimes, and then second, these are key witnesses that we pointed out in the brief, and I'd like to talk about each of them if we could. But Sintel, Travis, and Norell, we all submit this record shows they did not cooperate until after January of 1993. Is your argument then that the post-offense witness intimidation is relevant to the extent it informs or corroborates what you argue was reasonably likely at the time of the offense? Yes, Your Honor, it's relevant. In some ways, there are a couple of different things going on. There's the intimidation by the Bruce's, the active intimidation, the driving up to them, parking across the street from their homes. But then there's also the fact that at the moment these crimes occurred, all five of these witnesses were scared. They were terrified. That's in the record. The jury was told. All five of these witnesses told the jury, I was too scared to cooperate with the state because of who these guys were and what they do. Can we take account, does the record for our purposes include the 11th Circuit's recitation of facts and summary of the witnesses' testimony in the Brothers' case? Yes, Judge Krause, and the reason is they were citing basically the first trial transcript, but that's part of this court's record. We don't have that trial transcript. We have the court's recitation of it in its opinion. In particular, the 11th Circuit referenced Mike Franklin moving. Our record suggests that Ira Travis moved, but can you clear up that discrepancy? I will do my best, Your Honor. Both of them, I'm sorry, Ira Travis did not testify in the first trial. Mike Franklin testified in both. I believe Mike Franklin's testimony is in the appendix from the second trial. Each of them fled Tennessee. Ira Travis fled Tennessee. Mike Franklin, who was together with Patricia Odom at the time, fled together with Patricia Odom out of state. And that's in the record of Charles Gary Bruce's trial. It's also in the record of the first trial. What's the evidence that the reason that they left was because of their fear of the Bruce family rather than other independent reasons? To us, it's a pretty irrefutable inference from were you scared? Yes, we were terrified of the Bruce's. Why didn't you cooperate with the state investigators? And that's all, again, that's in this record of Charles Gary Bruce's trial. Did you even move out of state? Yes, and I'm summarizing the testimony, but that's the colloquy. And that's what this comes down to are these inferences that are very reasonable. And, again, we say that federal involvement was inevitable, not just reasonably likely. Do you have anything stronger than that? I understand your inference, but you affirmatively assert that one of them at least fled out of fear. Is there anything in the record that would they stop that? Is there a reason for leaving? Or is your argument simply based on inference? I'm not saying it's an unreasonable one. I just would like to understand what we have in the record. My recollection of the record, I'm happy to look it up, Your Honor, is that it is back-to-back questions. It's, you know, tell us about why you didn't cooperate. Why did you lie to the authorities at first in a couple of their instances? With Ira Travis, he lied. And then, you know, were you scared? Yes. Did you actually flee? So I don't think the question was asked specifically, did you flee because Charles Gary Bruce was coming after you, thought Bruce's were going to come get you. I don't know that it was connected in that particular way. But that's kind of the bottom line of our approach to this record, though, is the connecting the dots, as opposing counsel said. The dots here, we believe, could only be connected one way, and it's this pattern. It was the theme of closing arguments and opening arguments in particular, opening arguments of this assistant U.S. attorney. He spelled it out for the jury. You know, we had a hard time with the state investigation, and so we had to do a federal investigation. And he explained, this is why we do a federal investigation. You bring them to the grand jury, they feel more secure in the federal building, 60 miles. In this case, you did not have Bruce's reputation for violence and evidence of witness intimidation. Would you have enough dots? Yes. And it's because, well, I guess if we had the witnesses saying how scared they were, and then. . . But that's part of his reputation. If we didn't have these five witnesses, and we didn't have the other evidence of the reputation, it would not be enough to say that federal crimes were committed. We believe that's the fairest reading of Fowler. That's what Fowler was telling us. It's not, you can't just proceed on a possibility, hypothetical possibility. It has to be more than remote or outlandish. Is it enough that it was taken over by federal authorities? I'm sorry, I'm just crossing. Is it enough that the investigation was taken over by federal authorities? Does that de facto make it reasonably likely? No, Your Honor. It's probative, and I think the reply brief, and as I understand the other side's point, concedes that it can be probative if there's this other evidence that it was inevitable. We don't have to show it was inevitable. We have to show it was reasonably likely. In these other cases we've pointed out in our brief, the fact that an ultimate kind of very complicated multi-defendant federal prosecution occurred can certainly help inform the inquiry as to whether that was... Those were cases where the federal authorities were involved within a month or a couple of months. Here we have two years before federal authorities make any appearance. Isn't that relevant in our consideration of how remote the likelihood is of federal involvement here? No, Your Honor, and remoteness under Fowler is the remoteness of the likelihood. It's not how much time. We would submit that... What's your authority for that? That Fowler itself, that the chances, what the court's discussing in Fowler, the chances of this victim talking at some point with a federal official at least once, and that has to be more than just remote, outlandish, or simply hypothetical. So what you're saying, in effect, is the fact that this was a theft of mussel shells that were stolen for purposes of selling them in interstate commerce wouldn't be a factor? It is a factor. It is a factor? It's absolutely a factor. So that's something that was known at the time of the commission of the crime? No question. It's not sufficient, but it is absolutely a factor. So you're going to add all these dots together, as you referenced, and that's one of the dots? Absolutely. Yes, and this was a case built on reasonable inferences. There were no eyewitnesses because the two that were there were killed. Do you agree that the length of time is also one of the dots? I imagine, for example, if the federal authorities were involved here within two months instead of within two years, you would be making that argument as well. We would be making the same argument. You'd be making the argument that their rapid involvement contributed to likelihood. Where it's much longer, perhaps the inference goes the other way, but do you agree that the length of time that it takes before there is any federal involvement is also relevant, it's also a consideration? It's part of the analysis, yes, Your Honor, but there are very good reasons from this record why it took so long. Obviously, we've pointed out that Charles Gary Bruce has conceded the reason why it took so long. He couldn't get witnesses to come forward, couldn't get a state indictment, so he had to go to the federal authorities. I want to talk about the nature, in the brief time I have left, of this crime. There's references to just a few thousand dollars of mussel shells, and 2241 generates somewhat odd litigating scenarios. We're talking about a case from 20 years ago. May I finish my point, Your Honor? You may. Thank you. But here is a case where mussel shell bobbing was the biggest deal in this county, and Danny and Della had created this small business for themselves, and the Bruce's came and robbed these mussel shells, whether it sounds like a lot to opposing counsel or people in this courtroom today. It was a big deal. Everyone involved in this case, a few thousand dollars of mussel shells was a big deal. When the Bruce's robbed those mussel shells and burned this small business to the ground and, of course, took Danny and Della's lives, it was more than reasonably likely that federal involvement was going to occur. No one would have been surprised at the time of these crimes that federal authorities would have been involved. Your Honor, we ask this Court to affirm. Counsel, I had asked you earlier about the transcripts that were underlying the summary in the Eleventh Circuit's opinion. Can you submit those records to the Court post-argument? No question, Your Honor. I just want to make sure. There is basically the transcript from the first trial is what I understand the Eleventh Circuit was looking at, and we have that. We'll certainly make sure that this Court has access to that. Thank you. Thank you. Thank you, Mr. Ritz. Mr. Medrola. Thank you, Your Honor. Just briefly, with respect to a point that I believe Judge Fisher made on whether this Court might perhaps be out of step, as I believe Your Honor put it, with other circuits on the scope of 2241 jurisdiction. Of course, Tyler is binding on this Court, and this Court is not sitting and banking. So to the extent this panel has any concerns about the correctness of Tyler, I don't think this is the right proceeding to resolve those. And Tyler was binding on this Court not only on the scope of Section 2241 jurisdiction, but also on the merits question of how Fowler should be interpreted and when the reasonable likelihood standard of Fowler is met. We did not, and Tyler, and you rely on Tyler extensively in your brief as well, but we weren't making a merits determination, right? We were making a threshold determination to remand it to the district court, for the district court to make an actual merits determination. And it made a determination that espoused largely the reasoning of the dissent, which we then summarily affirmed. How can we look at that initial threshold determination as one that really supports the merits of the argument you're making? I think because this Court's assessment of the merits in Tyler, I think was bound up with its sense of whether Section 2241 jurisdiction was appropriate. This Court, in determining whether the safety valve of the habeas statute was triggered, looked at whether there was a sufficient basis for an actual innocence argument. And in so doing, this Court applied the Fowler standard on the merits and held that, yes, given the existing trial record there, there was not sufficient evidence to support a conviction for witness tampering after Fowler, and then remanded for an evidentiary hearing. This case is different in the sense that here the district court below proceeded under 2241 finding jurisdiction and denied the petition on the merits. But I think this Court's discussion of the merits in Tyler is binding on how that merits question should be considered. And it's important there that the Court, in assessing the merits in Tyler, held the standard to not be met even though the victim there was actively talking to state officials who were part of a task force that was actively working with federal agents. If that is not a reasonable likelihood of federal involvement, I don't know how this is. The government has noted that there was a lot of testimony about witnesses being scared, fleeing the state, et cetera. But ultimately and respectfully, I think that this is the key point, which is was federal involvement a reasonably likely response to all of that? And could a jury find that? Even if this Court accepts the inevitability of all that and we submit that there's nothing in the record that really raises it to that level, there certainly is nothing in the record that suggests a federal response was the reasonably likely way of coping with that. Unless this Court has any further questions, we'd ask that the Court reverse and remand to the district court. Thank you very much. And thank you to both counsel for excellent arguments in this case. And we'll take the matter under advisement.